**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| FKF MADISON PARK OWNER, LLC, et al.,[1] | ) | |
| | ) | Case No. 10-11867 (KG) |
| Debtors. | ) | |
| _____ | ) | Jointly Administered |
| | ) | |
| RANCE MASHECK AND TIM LIN, | ) | |
| | ) | Adv. No. 11-_____ (KG) |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| FKF MADISON GROUP OWNER LLC, JMJS 23RD | ) | |
| STREET REALTY OWNER LLC, MADISON | ) | |
| PARK GROUP OWNER LLC, SLAZER | ) | |
| ENTERPRISES OWNER LLC, THE WILLS | ) | |
| GROUP FAMILY LIMITED PARTNERSHIP, | ) | |
| FOREST MALL LLC, and ONE | ) | |
| MADISON FM LLC | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT OF RANCE MASHECK AND TIM LIN FOR DECLARATORY
JUDGMENT, IMPOSITION OF CONSTRUCTIVE TRUST, DEMAND FOR
EQUITABLE MARSHALLING AND REQUEST FOR EQUITABLE
SUBORDINATION AND OTHER RELIEF RELATING TO
DETERMINATION OF RIGHTS IN REAL PROPERTY**

COMES NOW Defendants RANCE MASHECK and TIM LIN ("Plaintiffs"), by

and through their undersigned counsel, pursuant to FED. R. BANKR. P. 7007 and FED. R.

CIV. P. 7(a), and in support of their Complaint hereby state and allege as follows:

**NATURE OF THE ADVERSARY PROCEEDING**

1.      By virtue of an executed Deed to Unit 49B of One Madison Park, New

York, New York (the "Property" or "Unit 49B"), Plaintiffs are the owners of the

---

[1] The Debtors in these cases, along with the last four digits of their EIN, are:  FKF Madison Group Owner,
LLC (Case No. 10-11867) (3699); JMJS 23rd Street Realty Owner, LLC (Case No. 10-11868) (6651);
Madison Park Group Owner, LLC (Case No. 10-11869) (3701); and Slazer Enterprises Owner, LLC (Case
No. 10-11870) (4339).  The Debtors' address is 230 Congers Road, New City, NY  10920.

1

Property. Each of the Defendants claims an ownership or lien interest in the Property, however, none of those interests are superior to the ownership interest of the Plaintiffs and Plaintiffs seek a judicial determination confirming their superior interest in the Property.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 USC §§ 157(b) and 1334 (b).

## THE PARTIES

3.      Plaintiffs are individuals who reside in New York and purchased the Property by paying the full Purchase Price and obtaining a Deed thereto with the intent of using it as their principal residence.

4.      Upon information and belief, Defendant FKF Madison Group Owner, LLC ("FKF Madison") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 230 Congers Road, New City, NY  10956.

5.      Upon information and belief, Defendant JMJS 23rd Street Realty Owner, LLC ("JMJS") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 230 Congers Road, New City, NY  10956.

6.      Upon information and belief, Defendant Madison Park Group Owner, LLC ("Madison") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 230 Congers Road, New City, NY  10956.

7.      Upon information and belief, Defendant Slazer Enterprises Owner, LLC ("Slazer Owner", together with FKF Madison, JMJS and Madison collectively, the

"Debtors") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 230 Congers Road, New City, NY 10956.

8.        Upon information and belief, Slazer Owner, Madison, FKF Madison and JMJS are co-owners, as tenants in common, of a condominium project located at 23 East 22nd Street, New York, New York and known as One Madison Park (the "Condominium Building"), in the following percentages:

| Defendant Slazer Owner | 78% undivided interest |
|---|---|
| Defendant Madison | 12% undivided interest |
| Defendant FKF Madison | 6% undivided interest |
| Defendant JMJS | 4% undivided interest |

9.        The Plaintiffs are Bona Fide Purchasers who paid Fair Market Value. The Debtors tendered a Deed to the Property to Plaintiffs but still claim an ownership interest in Property and have improperly attempted to invalidate Plaintiffs' interest in the Property through a Proposed Plan of Reorganization notwithstanding the requirement pursuant to Bankruptcy Rule 7001 that a determination of such property rights be determined by an adversary proceeding. Accordingly, Debtor's Proposed Chapter 11 Plan is Non-Confirmable on its face.

10.      Defendant Wills Group Family Limited Partnership ("Wills Group") loaned money (the "Wills Group Loan") to the Debtors and as security for such loan the Debtors entered into agreements (the "Wills Group Agreements") to sell certain units, including the Property, to Wills Group in the event of a default of the Wills Group Loan. The Wills Group Agreements were placed in escrow when the Wills Group Loan was made. The Wills Group declared a default of the Wills Group Loan and demanded that the Wills Group Agreements be released from escrow. At the time that the Wills Group

Agreements were released from escrow, the Debtors had already tendered a Deed to the Property to Plaintiffs. The Wills Group filed Adversary Action #11-51661.

11. Defendant One Madison FM LLC ("OMF") purports to hold a lien against all of the Debtors' assets including the Property. On or about November 16, 2007, the Debtors obtained financing from SFT I, Inc. ("SFT") for the purpose of developing the real estate known as One Madison Park and located at 23 East 22nd Street, New York, New York into luxury condominiums. Thereafter on March 1, 2009, SFT assigned the loan to iStar Tara, LLC ("iStar"). On or about June 8, 2010 the Debtors filed its Chapter 11 Petition for Relief. In or about April of 2011, the Debtors attempted to sell substantially all of its assets without notice to iStar. The sale did not close. Thereafter, iStar assigned its interest to SFI Belmont LLC ("SFI"). Subsequently, SFI assigned its interest to Amalgamated Bank ("Amalgamated") and Amalgamated assigned its interest to OMF. OMF and all of the successors to iStar took their assignment with full knowledge of Plaintiffs' interest in the Property.

## BACKGROUND

12. In June 2009, Plaintiffs entered into a Purchase Agreement ("49B Purchase Agreement") with the Debtors to purchase a condominium unit known as "Unit 49B" that was being constructed as part of a condominium development project commonly known as One Madison Park, in New York, New York. A true and correct copy of the 49B Purchase Agreement, as amended, is attached at Exhibit 1. At the time of the 49B Purchase Agreement, iStar was the Debtor's principal lender.

13. Plaintiffs had originally in June 2007 contracted to purchase Unit 19B of One Madison Park but due to concerns that the roof top mechanical systems of an adjoining property would partially obscure their view, Plaintiffs transferred their contract to Unit 22B before ultimately transferring the contract to Unit 49B in June of 2009.

4

14.     Plaintiffs paid the Debtors the full agreed Purchase Price in the total amount of $4,200,000 for the Property per the terms and by the methods outlined in the Purchase Agreement for the Property. The Debtors promptly and unequivocally acknowledged receipt of full payment for the Property.  On June 26, 2009, the Debtors executed the Deed conveying the Property to Plaintiffs (the "Deed").  A true and correct copy of the Deed is attached at Exhibit 2.

15.     While the Debtors delivered the Deed to Plaintiffs, it has not been recorded notwithstanding Plaintiff's request that the Debtors record the Deed.  The Debtors, however, failed to record the Deed.  The Property includes a 1.25% interest in the common elements of the condominium, together with three storage units and two wine cellars.

16.     On or about November 16, 2007, the Debtors obtain financing from SFT and granted SFT a mortgage on the Condominium Building.

17.     On or about June 24, 2009, the Debtors granted iStar another set of mortgages which modified the 2007 mortgage debt,  a Second Gap Mortgage for the Project Loan, Second Consolidated Mortgage for the Project Loan and an Amended and Restated Mortgage for the Building.

18.     Debtors and iStar began attempting to transfer their mortgage from a blanket lean to individual units

19.     The Modified Mortgage was not immediately recorded.

20.     Plaintiffs hold the Deed to the Property.  By reason of the conveyance evidenced by the Deed, Plaintiffs hold a fee simple right, title and interest in the Property.

21.     Section 291 of the New York Condominium Act  provides that

> "A conveyance of real property, within the state, on being duly
> acknowledged by the person executing the same, or proved as
> required by this chapter, and such acknowledgment  or proof  duly
> certified when required by this chapter, may be recorded in the

office of the clerk of the county where such real property is situated, and such county clerk shall, upon the request of any party, on tender of the lawful fees therefor, record the same in his said office. Every such conveyance not so recorded is void as against any person who subsequently purchases or acquires by exchange or contracts to purchase or acquire by exchange, the same real property or any portion thereof, or acquires by assignment the rent to accrue therefrom as provided in section two hundred ninety-four-a of the real property law, in good faith and for a valuable consideration, from the same vendor or assignor, his distributees or devisees, and whose conveyance, contract or assignment is first duly recorded, and is void as against the lien upon the same real property or any portion thereof arising from payments made upon the execution of or pursuant to the terms of a contract with the same vendor, his distributees or devisees, if such contract is made in good faith and is first duly recorded."

22.     Under New York law, unrecorded deeds are recognized as valid as to all other parties with claims against the real property except for a good faith purchaser for value who records first and New York courts have consistently held that an unrecorded deed has priority over a number of other parties with interest in the subject real estate including a judgment lien creditor. *Saidel v. Brenner,* 252 N.Y.S.2d 867, 44 Misc. 2d 60 (N.Y. Co. Ct. 1964).

23.     Prior to the Debtors' Petition for Relief, in February of 2010, iStar commenced a foreclosure proceeding against the Debtors regarding One Madison Park and various condominium units including the Property in the Supreme Court of the State New York, County of New York, iStar Tara LLC v. FKF Madison Group Owner LLC, et al., (the "Foreclosure Action").

24.     The Modified Mortgage had not been recorded prior to iStar commencing the Foreclosure Action.

25.     Upon information and belief, when the Debtors signed the Modified Mortgage, there was no legal description prepared or attached thereto.

26.     In or about March of 2010, iStar recorded the Modified Mortgage only after a preliminary hearing on February 22, 2010 in the Foreclosure Action during which

Justice Eileen A. Rakower expressed concern over the fact that the Modified Mortgage had not been recorded.

27.     The legal description attached to the recorded Modified Mortgage contained a list of condominium unit numbers, some of which were crossed out by hand. Further, Unit 49B was listed by iStar in its Inventory Control as a Sponsor Unit, carved, and a non-qualified unit.

28.     The Debtors filed a Motion to Dismiss the Foreclosure and while the New York Court did not grant the motion, with respect to the Debtors' assertion that there was no valid legal description associated with the Modified Mortgage, Justice James A. Yates observed that iStar essentially conceded that this was true at least at the time that the Modified Mortgage had been executed and that the reason that iStar gave for the delay in preparing a legal description and recording the Modified Mortgage was that iStar was unsure in June of 2009 as to what condominium units had been sold and were no longer subject to the iStar lien. Section 339-R of the New York Condominium Act provides that for any condominium, that

> "At the time of the first conveyance of each unit, every mortgage and other lien affecting such unit and any other unit shall be paid and satisfied of record, or the unit being conveyed and its common interest shall be released therefrom by partial release duly recorded."

29.     Section 339-R is a part of Article 9-B, New Yorks Condominium Act.

30.     Notwithstanding the requirements of §339-R of the New York Condominium Act, Debtors have failed to record the Plaintiff's Deed, and OMFs predecessor in interest, iStar, has failed to acknowledge payment and satisfaction of iStar's alleged blanket mortgages as to the Property. Furthermore, iStar has failed to release the Property and its common interest from its alleged mortgages by partial release duly recorded.

31.     Debtor's and OMF's, and its predecessor's, actions violate Plaintiffs' superior rights, title and interest in the Property, and such actions violate §339-R of the New York Condominium Act.

32.     As a direct, proximate result of Debtors' and OMF's, and its predecessor's, actions, the Debtors have failed to execute the required New York City and New York State transfer tax return documents with respect to the Property (the "Transfer Tax Documents"), and it appears that Plaintiffs will not be able to obtain signed Transfer Tax Documents from Debtors unless and until this controversy is resolved.

33.     The New York County Clerk requires signed Transfer Tax Documents as a condition to recording the Deed. Because Plaintiffs are not able to obtain signed Transfer Tax Documents, they are unable to record their Deed in the New York County Clerk's office.

34.     Plaintiffs bring this action, *inter alia*, seeking a declaratory judgment that they are the true and rightful owners of the Property and that they own the Property free of any claim from Debtors, OMF, Wills Group, Forest Mall, or anyone else.  Plaintiffs further seek to compel execution of the necessary Transfer Tax Documents (which require the signatures of both Purchaser and Seller) and to order that Debtors record the Deed, the Transfer Tax Documents and pay the Transfer Tax.  Debtors are required to pay the Transfer Tax under the Unit 49-B Purchase Agreement, as amended.

35.     The Property is not subject to OMF's or its predecessor's mortgage. Furthermore, pursuant to paragraphs 7 and 12 of the 49B Purchase Agreement, at the time of first conveyance of the Property to Plaintiffs, the Debtors were required to convey good and marketable title to Plaintiffs, free and clear of any and all outstanding mortgages and liens.  All such mortgages and liens on the Property and its associated

Common Elements, including the alleged mortgage held by OMF and its predecessors, were to be released.

36.     Pursuant to New York Real Property Law Section 339-R, upon the first conveyance of the Property, which conveyance was and is evidenced by the Deed, iStar was and now OMF is required to release its alleged mortgage on the Property and its associated Common Elements.

37.     In June of 2009, Plaintiffs and the Debtors amended the 49B Purchase Agreement (the "49B First Amendment") and pursuant to paragraph 5 of the 49B First Amendment, the Debtors also agreed to pay all New York City and New York State transfer taxes, including the "mansion tax", related to Plaintiffs' purchase of the Property a true and correct copy of the 49B First Amendment is attached hereto in Exhibit 1.

38.     Despite the first conveyance of the Property occurring on June 26, 2009, iStar failed to acknowledge payment and satisfaction of iStar's alleged blanket mortgages as to the Property. Despite the first conveyance of the Property on June 26, 2009, Debtors failed to record the Deed and to cause iStar to release the Property and its associated Common Elements from these alleged mortgages.

39.     iStar's and its successors', including OMF, failure to acknowledge payment and satisfaction of its alleged mortgages as against and affecting the Property and its associated Common Elements, and iStar's and its successors' failure to release the Property and its associated Common Elements from these mortgages and liens by partial release duly recorded, was and continues to be a violation of section 339-R of the New York Condominium Act.

40.     The iStar mortgage was not applicable to and therefore did not attach to the Property because Unit 49B was a Sponsor Owned Unit, not on the list of properties

subject to the mortgage, iStar failed to properly record and perfect its modified mortgage, and iStar failed to otherwise comply with applicable New York Condominium Law.

41.     The Debtors have not completed and executed the required New York City and New York State transfer tax return documents with respect to the Property. Because of the Debtors' failure to execute the Tax Transfer Documents, Plaintiffs are not able to record their Deed in the New York County Clerk's office.

42.     Defendants are regulated by and subject to the Declaration of Condominium, the Offering Plan, and the New York Condominium Act Article 9-B, including Section 339-R.

## COUNT I

## DECLARATORY JUDGMENT

43.     Plaintiffs reallege and incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

44.     Plaintiffs paid to the Debtors full consideration in the total amount of $4,200,000. for the Property in accordance with the Purchase Agreement, after which the Debtors conveyed the Property to them by Deed.  While the Debtors are obligated to record the Deed, they failed to do so.

45.     The Property is not property of the Estate.  Under Section 291 of the New York Condominium Act the Deed is valid as to all parties except a subsequent good faith purchaser for value who records first.

46.     While it is procedurally improper to do so, the Debtors apparently still claim an interest in the Property and sought to invalidate Plaintiffs' interest in the Property through the provisions in Debtors' Proposed Plan of Reorganization that it filed but has been unable to confirm.

47. Under section 291 of the New York Condominium Act, because there is an unrecorded Deed in favor of the Plaintiffs, the Debtors are obviously not good faith purchasers for value, and the Debtors do not own the Property.

48. Similarly, the Wills Group is not a good faith purchaser for value. Rather the Wills Group is a lender to the Debtors who allegedly obtained a right to purchase the Property as a result of the Debtors' defaulting on a loan to the Wills Group. Accordingly, Plaintiffs' Deed is valid and superior as to the Wills Group.

49. Furthermore, Plaintiff's Property is not subject to the mortgage alleged by OMF and its predecessors in interest. Alternatively, any mortgage alleged by OMF and its predecessors should be released and discharged. Plaintiffs hold the Deed to the Property. By reason of the conveyance evidenced by the Deed, Plaintiffs hold a fee simple right, title and interest in the Property.

50. Plaintiffs are entitled to a judgment against all Defendants declaring that they have sole right, title, and interest in the Property and its associated Common Elements, and that no other person or entity has a valid, legal interest in, or encumbrance against, the Property or its associated Common Elements, and further declaring that all such persons and entities are forever barred from taking any action that would or might impair the interests of Plaintiffs in the Property and its Common Elements.

## COUNT II

## DECLARATORY JUDGMENT REGARDING SECTION 339-R

51. Plaintiffs reallege and incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

52. The Debtors' tender of the Deed to Plaintiffs of the Property was the first conveyance of the Property under section 339-R of the New York Condominium Act.

53. Plaintiffs paid the Debtors for the Property and, upon information and

belief, the Debtors used these sale proceeds to pay its Builders and to bring its loan with iStar into a conforming status. Accordingly, Debtors and iStar benefited from the proceeds that Plaintiffs paid for the Property, in the total amount of $4,200,000.

54. Between June of 2009 and March of 2010 the Debtors sold a number of units in One Madison Park and iStar crossed out units that had been sold from the legal description of the mortgages that it obtained from the Debtors. Plaintiffs' Property had been sold during this time period and Unit 49B should have been stricken from the legal description as well.

55. After the Debtors tendered the Deed and pursuant to section 339-R of the New York Condominium Act , Debtors were obligated to record the Deed, OMF's and its predecessors' mortgage was not applicable, and every mortgage and other lien affecting such unit and its associated Common Elements, including the mortgage and liens alleged by iStar, should have been released

56. OMF and its predecessors have failed to satisfy its mortgage or release its lien against the Property and its common interest.

57. Debtor's, OMF's, and its predecessor iStar's conduct and that of its successors is contrary to Section 339-R of the New York Condominium Act .

58. Plaintiffs request an Order from this Court finding that OMF's mortgage is not applicable to Unit 49B and that OMF, as the successor to iStar, is obligated to satisfy or release its alleged lien against the Property

## COUNT III

## REQUEST FOR EQUITABLE SUBORDINATION

59. Plaintiffs reallege and incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

60.     Between the time that the Debtors signed the Modified Mortgage and iStar recorded the Modified Mortgage, iStar was aware that the Debtors' Sponsor Owned Units which were not subject to the iStar mortgage, and the Debtors had sold some of the condominium units but was uncertain as to of what units had been sold. Furthermore, iStar was not properly modifying its mortgage, not recording it on a timely basis, and improperly swapped legal descriptions on a document that was already previously executed.

61.     At the time that the Modified Mortgage was recorded, iStar was aware that Plaintiffs had claims to the Property and iStar chose to characterize Plaintiffs as being a lender to Debtors with an unperfected or unsecured interest in the Property when in fact it was only the Wills Group who was a lender to the Debtors while Plaintiffs are purchasers whose Deed was not recorded because the Debtors failed to execute The Transfer Tax Documents and failed to provide the funds necessary to pay the transfer tax necessary for the recording of the Deed.

62.     The sales proceeds of the Property which Plaintiffs provided to the Debtors were used to pay the Debtors' Contractors and to bring the loan into balance per the demands of iStar, and to make the Debtors' loan with iStar conforming such that both Debtors and iStar benefitted from the sale of the Property to Plaintiffs and Payments in the total amount of $4,200,000.

63.     Subordination of iStar's secured claim against the Property is consistent with equitable principles and applicable bankruptcy law, and, accordingly, the Court should subordinate iStar's lien claim in the Property to the claim of Plaintiffs pursuant to 11 U.S. C. § 510(c) by ordering that the Property is not subject to the OMF mortgage or any other Claim or Interest.

## COUNT IV

## EQUITABLE MARSHALING

64.     Plaintiffs reallege and incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

65.     Plaintiffs' equitable interest in the Property is such that they are entitled to take the Property free and clear of all alleged liens that the Debtors, OMF, iStar, Wills Group, Forest Mall, or others imposed upon the Property, and the Debtors, OMF and its predecessors are obligated to look to the other units of One Madison Park which belong to the Debtors, and not Unit 49B which was bought and paid for by the Plaintiffs,  and was to be conveyed to Plaintiffs free of any liens and mortgages pursuant to  339-R of the New York Condominium Act, the Unit 49B Purchase Agreement, and the Offering Plan.

66.     To the extent that OMF and its predecessors are otherwise able to maintain any lien against the Property, Plaintiffs request that the Court require a marshaling of assets and release the Property from such lien and require OMF and its predecessors and its successors to look to the other units in One Madison Park that the Debtors still owns to satisfy their lien.

## COUNT V

## CONSTRUCTIVE TRUST

67.     Plaintiffs reallege and incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

68.     To the extent that the Court determines that Plaintiffs are entitled to a determination that they own the Property free and clear of the OMF lien, Plaintiffs seek to impose a constructive trust over the Property for the Plaintiffs.

69.     Both the Debtors and OMF and its predecessors benefited from the funds that Plaintiffs paid to the Debtors for the Property and both the Debtors and OMF and its predecessors would be unjustly enriched if they are able to keep the funds paid by Plaintiffs to the Debtors for the Property.

70.     Plaintiffs request that the Court impose a constructive trust over the Property for the benefit of the Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment against Defendants:

a. declaring that Plaintiffs are the sole owners of the Property and that no other person or entity, including but not limited to Defendants, have any legal ownership or other interest in, claim to, or encumbrance against the Property, and that to the extent Defendants or anyone else asserts an ownership or other interest in, or encumbrance against, the Property such claimed interests and/or encumbrances are void *ab initio;*

b. directing Debtors and OMF to comply with section 339-R of the New York Condominium Act as it relates to Plaintiffs' Property and its associated Common Elements, by releasing the Property and its associated Common Elements from OMF's alleged mortgage and lien by partial release duly recorded;

c. determining that the Debtors' assets should be equitably marshaled such that OFM must look to the Property of the Debtors' estates to satisfy its lien and not Plaintiffs' Property;

d.  imposing a constructive trust upon the Property for the benefit of the Plaintiffs;

e.  determining that Plaintiffs are the owners of the Property and its associated common elements and that the Debtors conveyed their interest in the Property to Plaintiffs;

f.   determining that the Property is not property of the Estate;

g.  ordering Debtors to record the Deed, deliver possession of the Property, and to otherwise comply with their contractual obligations under the Purchase Agreement with Plaintiffs and Section 339-R of the New York Condominium Act, as it relates to Plaintiffs' Property and its associated Common Elements:

h.  directing them to pay and satisfy all mortgages and liens affecting Plaintiffs' Property and its associated Common Elements and causing Plaintiffs' Property and its associated Common Elements to be released from all such alleged mortgages and liens by partial release duly recorded;

i.  directing them to deliver to Plaintiffs a license agreement, at no additional cost to Plaintiffs, for the exclusive use of three (3) storage bins for so long as Plaintiffs own the Property, which agreement shall be assignable;

j.  directing them to deliver to Plaintiffs a license agreement, at no additional cost to Plaintiffs, for the exclusive use of two (2) wine storage units for as long as Plaintiffs own the Property, which agreement shall be assignable;

k.  directing them to execute the required New York City Real Property Transfer Tax Return and the New York State Combined Real Estate Transfer Tax Return ("Transfer Tax Documents") with respect to the Property and its associated Common Elements;

l.  directing them to pay all New York State and New York City real property transfer taxes, including the mansion tax and all filing fees in connection with filing the Transfer Tax Documents;

m.  directing them to provide Plaintiffs with a credit of up to $250,000 with Home Automation Systems to be installed in the Property or, in the alternative, with a reimbursement in the amount of $250,000;

n.  imposing a constructive trust upon the funds that Plaintiffs paid for the Property and which the Debtors still possess;

o.  declaring that Defendants and all others are forever barred from taking any action that will impair, or might impair, the interests of Plaintiffs in the Property and its Common Elements;

p.  directing the New York County Clerk to cancel all Notices of Pendency relating to the Property and its associated Common Elements, including those filed by Forest Mall and Wills Group;

q.  ordering that the Property be excluded from the Foreclosure Action filed by iStar in the state of New York.

r.  awarding Plaintiffs their costs of this action and attorneys' fees, to the extent permissible by law; and

s.  granting to Plaintiffs such other and further relief as the Court may deem equitable, just and proper.

Dated: August 26, 2011

Respectfully submitted,

WERB & SULLIVAN

/s/ Brian A. Sullivan
Brian A. Sullivan (No. 2098)
Duane D. Werb (No. 1042)
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, DE 19899
Telephone: (302) 652-1100
Telecopier: (302) 652-1111
E-mail: bsullivan@werbsullivan.com
E-mail: dwerb@werbsullivan.com

**Attorneys for Rance Masheck & Tim Lin**